1

2

3

4

5

6

7

8

9

THE HONORABLE CHIEF JUDGE
MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

11

12

13

14

15

16

17

| | |
|---|---|
| JOSE PEDROZA, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| REVENUEWIRE, INC. d/b/a SAFECART, a Washington corporation; and PARETOLOGIC, INC., a Canadian corporation, | ) ) ) ) ) |
| Defendants. | ) ) ) |

No. 2:12-cv-00183-MJP

MOTION TO DISMISS

**NOTE ON MOTION CALENDAR:
AUGUST 17, 2012**

**ORAL ARGUMENT REQUESTED**

18

19

20

21

22

23

24

25

26

27

## I.    INTRODUCTION

Pursuant to FRCP 12(b)(6), Defendants move to dismiss Plaintiff's claims alleging violation of Washington's Consumer Protection Act, fraud in the inducement, conspiracy to commit fraud in the inducement, breach of express warranties, breach of the implied warranty of merchantability, breach of contract, and unjust enrichment because the Complaint fails to state a claim with respect to these allegations. Defendants also move to strike Plaintiff's class action allegations pursuant to FRCP 12(b)(6).

Plaintiff's Complaint alleges that Defendants "impliedly represented to Plaintiff and the Class that the software [sold by Defendants to Plaintiff] would be fit for accurately detecting, reporting, and repairing computer errors and problems." But the only reason that Plaintiff gives

as to why the software did not perform as promised is that allegedly unnamed "computer forensics experts" have reported that the software exaggerates problems with consumers' computers. Plaintiff's Complaint does not allege any specific errors that RegCure overstated or fabricated. This fails to state a claim.

Therefore, to the extent that Plaintiff's Complaint sounds in fraud, it is unsupported by particularized factual allegations regarding the alleged falsity of the alleged statements as required by Fed. R. Civ. P. 9(b). Further, Plaintiff's Complaint otherwise fails to state a plausible claim for relief even under Fed. R. Civ. P. 8(a)(2) with respect to the Consumer Protection Act, warranty, and breach of contract claims because Plaintiff's complaint fails to allege facts establishing the falsity of any promise or statement by Defendants as required by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and subsequent cases.

Further, with respect to the class action allegations, the law of the state of each class member's purchase must be applied to his or her claims, and variations in the law of warranty, unfair trade practices, unjust enrichment and breach of contract would cause non-common issues to predominate, rendering a class unmanageable.

Moreover, Plaintiff's complaint itself establishes that individual issues predominate even with respect to whether any misrepresentation occurred, as the Court would have to evaluate computer forensics opinions as to each and every one of the computers in question. This would be unavoidable even to determine whether misrepresentations or breaches occurred.

## II.    PLAINTIFF'S ALLEGATIONS

### A.    General Allegations.

Regarding "Defendants' Wrongful Marketing of the RegCure Software," Plaintiff summarizes "the representations Defendants made to Plaintiff and the proposed Class and Subclass regarding the utility of the RegCure software" as follows: "RegCure would scan the user's PC, accurately report existing errors, and with the purchase of the full version of the software, would repair those errors." Compl. ¶ 19.

Plaintiff alleges that ParetoLogic represents that "[t]here is a 94% chance that your computer has registry errors hurting its performance," that "[e]rrors and corrupt files in your Windows registry are compromising the integrity of your system," and that symptoms of a "corrupted Windows registry" include "hardware malfunctions" and "system crashes." ParetoLogic claims that RegCure provides consumers with the means to "[p]rotect [their] investment and ensure maximum PC speed and performance" and that "[w]ith a free scan [using RegCure] you can easily find out what could be crippling your PC's performance." Compl. ¶ 16.

Plaintiff further alleges that ParetoLogic represents RegCure as capable of performing the following tasks:

- "Enhance your PC";
- "Optimize the speed of your PC and Fix Computer Errors"; and
- "[S]top error messages[.]"

Compl. ¶ 17. Further, "Defendant RevenueWire markets RegCure on its SafeCart.com website as '[t]he original tool for deep-scanning, repairing, cleaning and re-organizing of your PC's registry.'" "RevenueWire represents that '[r]unning this software increases the user's PC performance speed by ridding their computer's registry of errors, corrupted entries, and empty DLL files that can cause system errors or even total freezes.'" Compl. ¶ 18. However, Plaintiff alleges that "[i]n reality, RegCure cannot actually perform these beneficial tasks, and the actual utility of the software falls far short of those representations." Compl. ¶ 20.

According to Plaintiff's Complaint, "Defendants offer both a free and paid 'full' version of the RegCure software." "The free version of RegCure may be downloaded from either Defendants' websites. Once downloaded and installed, the software directs users to run a diagnostic scan of their PC." Compl. ¶¶ 21-22. Allegedly, "ParetoLogic offers to fix a handful of these errors free of charge, but in order to remove the remaining reported 'errors,' consumers are required to purchase the full version of the RegCure software." Compl. ¶ 24.

1    The foregoing allegations relate exclusively to Defendants' alleged representations.

2   The complaint does not address alleged falsity of the representations or the alleged defects until

3   paragraph 23 of the Complaint.  This allegation contains Plaintiff's only allegation that the

4   representations are false: "**Through his attorneys, Plaintiff has engaged computer forensic**

5   **experts who have uncovered that, following the free scan—regardless of whether there**

6   **are, in fact, any credible errors or other computer problems present on the PC—the**

7   **RegCure software invariably reports that numerous errors exist on the system.**"  Compl. ¶

8   23.  This is the full extent of factual allegations regarding the falsity of Defendants' alleged

9   representations.

10    It is exclusively on this basis that Plaintiff alleges that "Plaintiff and each member of

11   the proposed Class downloaded the free version of the RegCure software and ran a scan of their

12   PCs" and "was wrongfully presented with alerts regarding numerous errors and problems

13   purportedly found on their computers by the software."  Compl. ¶ 25.

14    Plaintiff alleges that the Defendants' alleged misrepresentations caused the Plaintiff and

15   alleged class members to purchase the Defendants' products in reasonable reliance upon the

16   alleged misrepresentations.  Compl. ¶¶ 26-29. The Complaint's separate allegations against

17   Defendant RevenueWire are exclusively that RevenueWire acted as an intermediary in these

18   transactions. There is no additional allegation of falsity against RevenueWire. *See* Compl. ¶¶

19   30-38.

20   **B.   Allegations as to Plaintiff Pedroza.**

21    The Complaint describes Plaintiff Pedroza's experience with the transaction and

22   products in question. *See* Compl. ¶¶ 39-53. Pedroza alleges that in or about March 2009, he

23   was dissatisfied with the performance of his PC, and therefore searched the Internet search for

24   products that could address the problems he was experiencing. Compl. ¶ 39.  He alleges that he

25   encountered a ParetoLogic website and clicked on an advertisement for RegCure, and then he

26   downloaded a free version of the software.  Compl. ¶ 39.  Plaintiff alleges that the

27   advertisement induced him to purchase RegCure through the website's representations.  The

website directed him to RevenueWire's transaction webpage where, following the instructions, he input his personal contact and payment information in order to pay for the full version of the software. (Compl. ¶ 40-50.)

However, these specific allegations with respect to Plaintiff Pedroza's experience add nothing to allegations that the statements on the website were false: "As described herein, some, if not all, of the errors purportedly found on Plaintiff's PC did not actually exist and/or were dramatically overstated by the RegCure software. Thus, the errors did not need to be and, indeed, could not actually be 'fixed.'" Compl. ¶ 49.

**C.     The Claims Alleged in This Lawsuit**

Plaintiff alleges ten causes of action against Defendants: breach of express warranties, breach of the implied warranty of merchantability, fraud in the inducement, conspiracy to commit fraud in the inducement, negligence, breach of contract (against Defendants jointly, and separately against Defendant RevenueWire), unjust enrichment (against Defendants jointly, and separately against Defendant RevenueWire), and violation of Washington's Consumer Protection Act (against Defendant RevenueWire).

**D.     The Plaintiff's Proposed Class and Subclass.**

Plaintiff seeks to certify this case as a class action on behalf of a class (the "Class") and a subclass (the "Subclass") defined as follows:

> The RegCure Class: All individuals and entities in the United States and its territories who have paid any amount to purchase ParetoLogic, Inc.'s RegCure software.

> The Undisclosed Fee Subclass: All members of the Class who were charged an additional undisclosed fee by RevenueWire, Inc.

> Excluded from the Class and Subclass are (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest, and those entities'' current and former employees, officers, and directors, (2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, (3) persons who execute and file a timely request for exclusion, (4) persons who have had their claims in this matter finally adjudicated and/or otherwise released, and (5) the legal representatives, successors, and assigns of any such excluded person.

MOTION TO DISMISS - 5
No. 2:12-CV-00183-MJP

126484.0001/5317752.1

LANE POWELL pc
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

1  Plaintiff proposes himself as Class and Subclass representatives and his counsel as Class and

2  Subclass counsel.

3                                    **III.    ARGUMENT**

4  **A.    FRCP 12(b)(6) Standard.**

5          In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court clarified the

6  pleading requirements under Federal Rule 8(a)(2) (which states that a complaint must include

7  "a short and plain statement of the claim showing that the pleader is entitled to relief"), where

8  the plaintiff claims relief under a complex statutory scheme, and the case is likely to be

9  expensive to investigate and certainly to try.  The Court held that "[w]hile a complaint attacked

10  by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's

11  obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

12  conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at

13  555-56.  "Factual allegations must be enough to raise a right to relief above the speculative

14  level." *Id.* at 556 (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp.

15  235-236 (3d ed. 2004) ("the pleading must contain something more . . . than . . . a statement of

16  facts that merely creates a suspicion [of] a legally cognizable right of action")).

17          For example, in *Twombly*, the Court stated that "[a]pplying these general standards to a

18  § 1 [Sherman Antitrust Act] claim, stating a claim requires a complaint with enough factual

19  matter (taken as true) to suggest an agreement." *Id.* at 556.  "The need at the pleading stage for

20  allegations plausibly suggesting (not merely consistent with) agreement reflects Rule 8(a)(2)'s

21  threshold requirement that the 'plain statement' possess enough heft to 'sho[w] that the pleader

22  is entitled to relief.'" *Id.*

23          The lesson from *Twombly* is that plaintiffs, particularly in large, complex cases, must do

24  a certain amount of investigation before filing a complaint, rather than through discovery, to

25  avoid burdening the court and defendants with unnecessary and massive discovery.    The

26  enhanced pleading requirement clarified in *Twombly* is especially applicable where, as here,

27  discovery is likely to be expensive.  In *Twombly*, the Court stated that "it is one thing to be

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

1  cautious before dismissing an antitrust complaint in advance of discovery, but quite another to

2  forget that proceeding to antitrust discovery can be expensive." *Id*. at 559.  Thus, "a district

3  court must retain the power to insist upon some specificity before allowing a potentially

4  massive factual controversy to proceed." *Id*.  (citing *Associated Gen. Contractors of Cal., Inc.*

5  *v. Carpenters*, 459 U.S. 519, 528 n.17 (1983)).

6      Discovery in this case could be massive, which triggers application of *Twombly*'s more

7  exacting pleading standards.  Plaintiff's complaint falls short here, as it cites only an

8  anonymous "computer forensic" expert's purported conclusions to support the claim that

9  Defendants' advertisements were false, allegedly because Defendants' product generated false

10  positives and otherwise overstated problems, allegedly inducing Plaintiff to purchase additional

11  products from Defendant, alleging no actual facts whatsoever.

12      In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009), the Court elaborated on

13  *Twombly*, and the case provides an illustrative model of how federal courts should address the

14  allegations such as are made in this alleged class action lawsuit that purportedly would capture

15  potential plaintiffs from all over the United States.  The Court held that Iqbal's complaint failed

16  to plead facts sufficient to state a claim against Attorney General Ashcroft and Director Mueller

17  for purposeful and unlawful discrimination. *Iqbal*, 556 U.S. 686.  The Court observed, "Rule 8

18  ... does not unlock the doors for a plaintiff armed with nothing more than conclusions." *Id*. at

19  678-79.

20      Two working principles underlie our decision in *Twombly*. First, the tenet that a
   court must accept as true all of the allegations contained in a complaint is

21   inapplicable to legal conclusions. Thread-bare recitals of the elements of a cause
   of action, supported by mere conclusory statements, do not suffice. *Id*. at 555,

22   127 S.Ct. 1955 (Although for the purposes of a motion to dismiss we must take
   all of the factual allegations in the complaint as true, we "are not bound to

23   accept as true a legal conclusion couched as a factual allegation " (internal
   quotation marks omitted)). Rule 8 marks a notable and generous departure from

24   the hyper-technical, code-pleading regime of a prior era, but it does not unlock
   the doors of discovery for a plaintiff armed with nothing more than conclusions.

25   Second, only a complaint that states a plausible claim for relief survives a
   motion to dismiss. Determining whether a complaint states a plausible claim for

26   relief will, as the Court of Appeals observed, be a context-specific task that
   requires the reviewing court to draw on its judicial experience and common

27   sense. But where the well-pleaded facts do not permit the court to infer more

MOTION TO DISMISS - 7
No. 2:12-CV-00183-MJP

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Id.* (emphasis added) (internal citations omitted) (alteration in original).

We begin our analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth. Respondent pleads that petitioners "knew of, condoned, and willfully and maliciously agreed to subject [him]" to harsh conditions of confinement "as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest." **The complaint alleges that Ashcroft was the "principal architect" of this invidious policy, and that Mueller was "instrumental" in adopting and executing it. These bare assertions, much like the pleading of conspiracy in *Twombly*, amount to nothing more than a "formulaic recitation of the elements" of a constitutional discrimination claim, namely, that petitioners adopted a policy " 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." As such, the allegations are conclusory and not entitled to be assumed true.** To be clear, we do not reject these bald allegations on the ground that they are unrealistic or nonsensical. We do not so characterize them any more than the Court in *Twombly* rejected the plaintiffs' express allegation of a "'contract, combination or conspiracy to prevent competitive entry,'" because it thought that claim too chimerical to be maintained. It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth.

*Id.* at 680 (emphasis added) (internal citations omitted) (alterations in original). As explained in more detail below, although Plaintiff's Complaint contains a patina of factual allegations -- mostly fragmentary quotes from Defendants' internet sites and descriptions of the mechanics of the transactions -- with respect to allegations that Defendants misrepresented facts or broke promises made to Plaintiff, the Complaint consists entirely of legal conclusions cloaked as factual allegations. Naked recitations of elements of claims and legal conclusions -- let alone claims and conclusions asserting fraud, but without the particularity required by Rule 9(b) -- are due no weight.

Moreover, when a claim sounds in fraud, as Plaintiff's Complaint does here, Fed. R. Civ. P. 9(b) requires that "the circumstances constituting fraud or mistake shall be stated with particularity." *See Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003) (holding that Rule 9(b) applies not only to common law fraud claims, but to all claims that sound in fraud); *see also Cafasso v. General Dynamics C4 Sys.*, 637 F. 3d 1047, 1055 (9th Cir.

2011) ("claims of fraud or mistake... must, in addition to pleading with particularity, also plead plausible allegations"). A plaintiff must plead "the who, what, when, where, and how" of the misconduct charged, including what is false or misleading about a purportedly fraudulent statement and why it is false. *See id.*; *see also Decker v. Glenfed, Inc.* 42 F.3d 1541, 1548 (9th Cir. 1994).

Under Rule 9(b), Defendants are entitled to all these facts in Plaintiff's pleading. *See Cafasso*, 637 F.3d at 1055 (observing that allegations that "identif[y] a general sort of fraudulent conduct but specif[y] no particular circumstances of any discrete fraudulent statement, [are] precisely what Rule 9(b) aims to preclude"). Yet the Court will search the Complaint in vain for any such facts.

Accordingly, the Complaint fails to state a claim with respect to the violation of Washington's Consumer Protection Act, fraud in the inducement, conspiracy to commit fraud in the inducement, breach of express warranties, breach of the implied warranty of merchantability, breach of contract, unjust enrichment, and class action allegations.

Among other things,

• Plaintiff's Complaint sounds in fraud, but is unsupported by particularized **factual allegations** regarding the alleged falsity of the alleged statements as required by Fed. R. Civ. P. 9(b);

• Plaintiff's Complaint otherwise fails to state a plausible claim for relief even under Fed. R. Civ. P. 8(a)(2) with respect to the Consumer Protection Act, warranty, and breach of contract claims because Plaintiff's complaint fails to allege **facts** establishing the falsity of any promise or statement by Defendants.

Under these circumstances, the Complaint contains insufficient heft to satisfy Rule 8(a)(2), *see Iqbal*, 129 S. Ct. at 1949 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotations omitted)); *see also Cafasso*, 637 F.3d at 1057 (affirming dismissal of False Claims Act complaint in light of plaintiff's failure to

MOTION TO DISMISS - 9
No. 2:12-CV-00183-MJP
126484.0001/5317752.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

identify any false claims, as well as an "obvious alternative explanation" that no false claims had been made). Therefore, the Complaint certainly fails to satisfy the particularized pleading requirements of Rule 9(b).

**B.     The Violation of Washington's Consumer Protection Act Claim Should be Dismissed.**

"The elements of a CPA violation are (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) that impacts the public interest; (4) and causes injury to the plaintiff in his or her business or property; and (5) such injury is causally linked to the unfair or deceptive act." *Pierce v. NovaStar Mortg., Inc.*, 238 F.R.D. 624, 626 (W.D. Wash. 2006) (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986)). A plaintiff alleging that the defendant engaged in unfair or deceptive conduct through misrepresentations cannot establish a violation of the CPA unless that individual was induced into some action to his detriment on the basis of the defendant's misrepresentations. *Crane & Crane, Inc. v. C & D Elec., Inc.*, 37 Wn. App. 560, 563, 683 P.2d 1103 (1984).

A plaintiff cannot simply allege that a defendant's act had the *capacity* to deceive; rather, **the plaintiff bears the burden of proving that there is causal link between a defendant's unfair act and a consumer's injury.** *Schnall v. AT&T Wireless Servs., Inc.*, 171 Wn.2d 260, 278, 259 P.3d 129 (2011). Indeed, **the causal link must establish that the injury complained of would not have happened "*if not for* defendant's violative acts."** *Id.* (internal citations omitted) (emphasis added).

Here the only allegations attempting to establish causal link between the Defendants' allegedly false advertising and Plaintiff's injury are as follows:

- "Through his attorneys, Plaintiff has engaged computer forensic experts who have uncovered that, following the free scan—regardless of whether there are, in fact, any credible errors or other computer problems present on the PC—the RegCure software invariably reports that numerous errors exist on the system." Compl. ¶ 23.

MOTION TO DISMISS - 10
No. 2:12-CV-00183-MJP

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

- "As described herein, some, if not all, of the errors purportedly found on Plaintiff's PC did not actually exist and/or were dramatically overstated by the RegCure software. Thus, the errors did not need to be and, indeed, could not actually be 'fixed.'" Compl. ¶ 49.

These allegations provide no information regarding the alleged discrepancies between what has been reported by RegCure and what actually exists in the system. These allegations are insufficient, and therefore Plaintiff's CPA claim must be dismissed.

In *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012), a purchaser of a notebook computer sued the computer manufacturer, claiming that it concealed a design defect in the computer that manifested after the expiration of the warranty and created an unreasonable safety hazard in violation of California's Consumers Legal Remedies Act and Unfair Competition Law. The Court held that the plaintiff failed to allege a causal connection between an alleged design defect – fragility in a component that connected the power jack to the motherboard – and an alleged safety hazard. This causal connection was required to state a claim against the manufacturer under the relevant statutes. The complaint did not allege how the weakening or loss of the connection between the power jack and the motherboard could cause the computers to ignite.

> Plaintiffs have not alleged a sufficient nexus between the alleged design defect and the alleged safety hazard. In *Tietsworth v. Sears, Roebuck & Co.*, No. 5:09-CV–00288 JF (HRL), 2009 WL 3320486, 2009 U.S. Dist. LEXIS 98532 (N.D. Cal. Oct. 13, 2009), plaintiffs asserted that Sears' washing machines contained a defect in their Electronic Control Boards that caused the machines to stop mid-cycle and display a variety of error codes. In their complaint, plaintiffs also alleged that the defective control boards led to the machines' spinning out of control and exploding. *Id.* at *4–5, 2009 U.S. Dist. LEXIS 98532, at *14–15. The court found that there was "no obvious nexus ... between this allegation and the specific defect in the Electronic Control Board asserted continuously throughout the [complaint]." *Id.* at *5, 2009 U.S. Dist. LEXIS 98532, at *15.
>
> In the case at bar, the complaint goes into some detail as to how normal use of the Laptops (i.e., turning them on and off, plugging in an a/c adapter) causes the connection between the power jack and the motherboard to weaken, resulting in a loss of power to the Laptops. The complaint, however, does not allege how the weakening or loss of the connection between the power jack and the motherboard causes the Lap-tops to ignite. *See Rhynes v. Stryker Corp.*, No. 10–5619 SC, 2011 WL 2149095, at *3 (N.D. Cal. May 31, 2011) (dismissing

MOTION TO DISMISS - 11
No. 2:12-CV-00183-MJP

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

plaintiff's strict liability and negligence claims under Iqbal where plaintiff did "not allege facts indicating how the [design defect] has caused her harm"). The complaint merely states that when Kruschen plugged in his computer and turned it on, the Laptop emitted "heavy smoke, flames, and sparks from the left side of the Laptop (close to the power jack)." The complaint is silent on whether the power jack's becoming disconnected in any way led to Kruschen's Laptop's catching fire. Some of the customer complaints do minimally allege such a causal connection, such as "[a]t the time when the power jack completely failed, smoke began to flow rapidly from inside the computer." These statements, however, are not accompanied by any supporting factual basis.

*    *    *

As Plaintiffs do not plead any facts indicating how the alleged design defect, i.e., the loss of the connection between the power jack and the mother-board, causes the Laptops to burst into flames, the District Court did not err in finding that Plaintiffs failed to plausibly allege the existence of an unreasonable safety defect.

*Id.* at 1144-45. Likewise, here Plaintiff alleges that unnamed "computer forensics experts" have identified inaccuracies in Defendants' representations, but Plaintiff does not allege any specific errors that RegCure overstated or fabricated. This does not satisfy Rule 8's pleading standards as elaborated by *Twombly* and its progeny.

## C.    The Fraud in the Inducement Allegation Should be Dismissed.

Fraud in the inducement is fraud that induces the transaction by misrepresentation of motivating factors, such as value or other characteristics of the property.[1]  *Pace-Knapp v. Pelascini*, 2008 WL 699279, *4 (Wn. App. Div. 1, Mar. 17, 2008).  In order to state a claim for fraud in the inducement, the Plaintiff must establish each of the nine elements of a claim for fraud.  *See Thornes v. IMB Lender Bus. Process Servs., Inc.*, No. C10-1716MJP, 2011 WL 677428, *3 (W.D. Wash. Feb. 15, 2011) (Pechman, J.) (dismissing fraud claims); *Petersen v. Turnbull*, 68 Wn.2d 231, 235, 412 P.2d 349 (1966).  The nine elements of fraud are: (1) a representation of existing fact, (2) that is material, (3) and false, (4) the speaker knows of its falsity, (5) intent to induce another to act, (6) ignorance of its falsity by the listener, (7) the latter's reliance on the truth of the representation, (8) her right to rely on it, and (9) consequent

---

[1] There is no separate cause of action for conspiracy to commit fraud in the inducement. Because Plaintiff's claim for fraud in the inducement should be dismissed, Plaintiff's claim for conspiracy to commit fraud in the inducement should similarly be dismissed.

MOTION TO DISMISS - 12
No. 2:12-CV-00183-MJP

LANE POWELL pc
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

damage. *Thornes*, 2011 WL 677428 at *3; *Pedersen v. Bibioff*, 64 Wn. App. 710, 723 n. 10, 828 P.2d 1113 (1992).

Again, Civil Rule 9(b) requires a plaintiff averring fraud to set forth the circumstances constituting fraud with particularity. Rule 9(b) "requires dismissal when a complaint fails to plead fraud with particularity." *Haberman v. Wash. Pub. Power Supply Sys.*, 109 Wn.2d 107, 165, 744 P.2d 1032 (1987).[2] The rule ensures "that plaintiffs seek redress for a wrong rather than use lawsuits as pretexts to discover unknown wrongs, protects defendants from unnecessary harm to their reputation, and gives defendants sufficient notice to enable them to prepare a defense." *Id.* "A complaint adequately alleges fraud if it informs the defendant of who did what, and describes the fraudulent conduct and mechanisms." *Id.*

Plaintiff alleges Defendants engaged in fraud that induced consumers to purchase RegCure by "promoting and advertising the RegCure software as being able to accurately detect, report and repair errors and other problems on a consumer's PC." Complaint at ¶ 94. Plaintiff alleges Defendants actively misstate, misrepresent, and conceal that actual utility of the RegCure software. *Id.* at ¶ 94. Plaintiff alleges that ParetoLogic, Inc. intentionally designed the software to report false positives. *Id.* at ¶ 95.

But Plaintiff offers no support for that allegation. Plaintiff alleges only that an unnamed "computer forensic expert" believes that the software reports errors that are erroneous or overstated – but no errors are identified in the Complaint. *Id.* at ¶ 23. Plaintiff does not allege any facts supporting this expert's credentials, what research he or she did, or the results of any such research with any specificity. These failures fall short of the heightened pleading requirements of Rule 9(b).

With respect to RevenueWire, Plaintiff alleges that RevenueWire facilitated the distribution of RegCure and had knowledge of the deceptive nature of the representations regarding its utility. But Plaintiff fails to allege RevenueWire's alleged knowledge with any

---

[2] *Haberman* addressed Washington Rule of Civil Procedure 9(b), which is identical in all material respects to Federal Rule of Civil Procedure 9(b).

MOTION TO DISMISS - 13
No. 2:12-CV-00183-MJP

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

1  particularity, much less how RevenueWire acquired such knowledge. These failures are fatal to

2  any claim of fraud. These bald allegations fall short of the heightened pleading requirements of

3  Rule 9(b).

4  **D.      The Express Warranty Claim Should be Dismissed.**

5          In order to state a claim for breach of express warranty, Plaintiff must demonstrate that

6  the Defendants made an "affirmation of fact or promise" to the "buyer which relates to the

7  goods and becomes part of the basis of the bargain." RCW 62A.2-313. In order to recover for

8  breach of express warranty, a plaintiff must show that the representation was not "merely the

9  seller's opinion or commendation of the goods." *Klickitat County Public Utility Dist. No. 1 v.*

10  *Stewart & Stevenson Servs., Inc.*, No. CY-03-3175-LRS, 2006 WL 908042, *12 (E.D. Wash.

11  Apr. 7, 2006). "The more specific a statement, the more likely it is an affirmation of fact or a

12  promise." *Federal Signal Corp. v. Safety Factors, Inc.*, 125 Wn.2d 413, 424, 886 P.2d 172

13  (1994) (citing 1 James J. White & Robert S. Summers, *Uniform Commercial Code* § 9-4, at

14  445-47 (3d ed. 1988)). "Further, affirmations of fact or promises will generally relate to the

15  quality of a good." *Id.* (citing Debra L. Goetz et al., Special Project, *Article Two Warranties in*

16  *Commercial Transactions: An Update*, 72 Cornell L.Rev. 1159, 1171 (1987)).

17          "Additional factors to consider are whether any hedging occurred, the experimental

18  nature of the good, a buyer's actual or imputed knowledge of the true condition of the good,

19  **and the nature of the defect.**" *Id.* (citing Andrew M. Baker et al., Special Project, *Article*

20  *Two Warranties in Commercial Transactions*, 64 Cornell L.Rev. 30, 61 (1978); *see also* White

21  & Summers, at 446-47).

22          Here Plaintiff's only allegations that RegCure's representations are false or that the

23  alleged express warranties were breached because the product was defective are general

24  allegations that Defendants warranted that RegCure would, but did not, accurately detect,

25  report, and repair computer errors and problems. *Id.* at 66. But Plaintiff offers no factual

26  support for those allegations.

27          Although he alleges that some errors may not have existed or were overstated (which

MOTION TO DISMISS - 14
No. 2:12-CV-00183-MJP

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

1    Defendants deny), and that unnamed "computer forensics experts" identified these

2    discrepancies, Plaintiff does not allege any specific errors that RegCure overstated or

3    fabricated. These failures fall short of the pleading requirements imposed by *Twombly*.

4    **E.      The Breach of Implied Warranty of Merchantability Claim Should be Dismissed.**

5            A warranty that goods shall be merchantable is implied in a contract for their sale if the

6    seller is a merchant with respect to goods of that kind. RCW 62A.314. Goods need not be

7    "perfect" in order to be "merchantable." *Federal Signal Corp. v. Safety Factors, Inc.*, 125

8    Wn.2d 413, 427, 886 P.2d 172 (1994). "The requirement most often cited is that of 'fit for the

9    ordinary purposes.'" *Id.* (citing RCW 62A.2-314(2)(c)). In order to state a claim for breach of

10   the implied warranty of merchantability, a plaintiff must establish: (1) that a merchant sold the

11   goods, (2) which were not 'merchantable' at the time of sale, and (3) injury and damages to the

12   plaintiff or his property (4) were caused proximately and in fact by the defective nature of the

13   goods, and (5) notice to the seller of the injury. *See Seattle Flight Serv., Inc. v. City of Auburn*,

14   24 Wn. App. 749, 604 P.2d 975 (1979).

15           Plaintiff alleges that Defendants "impliedly represented to Plaintiff and the Class that

16   the software would be fit for accurately detecting, reporting, and repairing computer errors and

17   problems." Complaint at ¶ 74. The only reason that Plaintiff gives as to why the software did

18   not perform as promised is that it allegedly was designed to identify "false positives." *Id.* at ¶

19   75. Again, Plaintiff alleges only that unnamed "computer forensics experts" identified these

20   discrepancies; Plaintiff does not allege any specific errors that RegCure overstated or

21   fabricated. This fails to state a claim.

22   **F.      The Breach of Contract Claim Should be Dismissed.**

23           A breach of contract claim is only actionable if a plaintiff alleges the existence of a

24   contract, the contract imposes a duty, the duty is breached, and the breach proximately causes

25   damage to the claimant. *Cardenas v. Navigators Ins. Co.*, No. C11-5578, 2011 WL 6300253,

26   *4 (W.D. Wash. Dec. 16, 2011); *Northwest Independent Forest Mfrs. V. Dept. of Labor and

27   Indus.*, 78 Wn. App. 707, 712, 899 P.2d 6 (1995). Here, however, Plaintiff failed to allege any

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

1  of the terms of the contract.  He does not allege what duties were imposed by the contract, how

2  any such duty was breached, or how he was damaged.

3      Furthermore, although Plaintiff generally alleges that Defendants agreed to provide him

4  with a product that would remove errors and other problems from his computer, he never

5  alleges that RegCure did not accomplish this goal.  Again, there is only the general allegation

6  that an unnamed "computer forensics expert" identified false positives, while failing to identify

7  any.  The Complaint does not allege any facts supporting proximate cause and damages.

8  Therefore, Plaintiff failed to state a claim for breach of contract.

9  **G.      The Unjust Enrichment Claim Should be Dismissed.**

10     In the alternative to the breach of contract claim, Plaintiff alleges a claim based on the

11  doctrine of unjust enrichment.  This doctrine holds that a person shall not be allowed to profit

12  or enrich himself inequitably at another's expense.  *Exxon Mobil Corp. v. Freeman Holdings of*

13  *Wash., LLC*, 779 F. Supp. 2d 1171, 1183 (E.D. Wash. 2011) (granting motion to dismiss unjust

14  enrichment claim); *Lloyd v. Ridgefield Lumber Ass'n*, 38 Wn.2d 723, 735-36, 231 P.2d 613

15  (1951).  The remedy of unjust enrichment is only available where a plaintiff can show that it

16  conferred a benefit upon the defendant, the defendant accepted and used the benefit, and it

17  would be inequitable to allow the defendant to retain the benefit.  *PWI Techs., Inc. v. CMI*

18  *Worldwide*, No. 52462-3-I, 2004 WL 1203126, *3 (Wn. App. Div. 1, 2004).

19     Here, Plaintiff fails to allege why allowing Defendants to retain the purchase price that

20  Plaintiff paid for RegCure would be inequitable.  Indeed, Plaintiff never alleges that RegCure

21  did not identify errors on his computer and repair them, nor does Plaintiff allege any specific

22  overstated or misstated problems with his computer.  General and vague references to findings

23  of "computer forensics experts" are insufficient to support an allegation that Defendants are not

24  entitled to retain the purchase price.

25  **H.      The Class Action Allegations Should be Stricken.**

26      **1.      FRCP 12(b)(6) May Support Striking Class Certification Allegations.**

27      "Prior to the class certification stage, '[a] defendant may move to strike class allegations

1  prior to discovery in rare cases where the complaint itself demonstrates that the requirements

2  for maintaining a class action cannot be met.'" *Rios v. State Farm Fire & Cas. Co.*, 469 F.

3  Supp. 2d 727, 736 (S.D. Iowa 2007) (quoting *Andrews v. Home Depot U.S.A., Inc.*, No. 03 cv

4  5200, 2005 WL 1490474, at *2 (D.N.J. June 23, 2005)); *see also, Strzakowlski v. Gen. Motors*

5  *Corp.*, No. 04-4740, 2005 WL 2001912, at *26 (D. N.J. Aug. 16, 2005) (denying motion to

6  dismiss class allegations, and noting that "courts permit class action allegations to be stricken

7  prior to discovery, such as on a Rule 12(b)(6) motion.  However, such a dismissal should be

8  ordered only 'in those rare cases where the complaint itself demonstrates that the requirements

9  for maintaining a class action cannot be met.'"); *Fulcher v. City of Wichita*, 445 F. Supp. 2d

10 1271 (D. Kan. 2006) (same).

11      This is precisely one of those "rare cases" in which dismissal of class allegations is

12 warranted.  From the face of Plaintiff's Complaint, it is clear that Plaintiff cannot satisfy the

13 typicality requirement of Rule 23(a) and the predominance and superiority requirements of

14 Rule 23(b)(3).

15      **2.      Typicality and Predominance standards.**

16      Rule 23(a)'s typicality requirement "is satisfied when each class member's claim arises

17 from the same [common] course of events and each class member makes similar legal

18 arguments to prove the defendant's liability." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir.

19 1993).  The test is whether the defendant is alleged to have interacted "in the same general

20 fashion [with] the class representatives and the other members of the class." *Id*. at 937.  Rule

21 23(b)(3) provides that a class action may be maintained if the Court finds that "the questions of

22 law or fact common to the members of the class predominate over any questions affecting only

23 individual members" ("predominance" requirement).  "In other words, the issues in the class

24 action that are subject to generalized proof, and thus applicable to the class as a whole, must

25 predominate over those issues that are subject only to individualized proof." *Jackson v. Motel*

26 *6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997).

27

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

3.    **Individual Choice of Law Issues and Applications of Disparate Laws Predominate.**

Taking Plaintiff's Complaint on its face, Plaintiff has alleged a class potentially comprised of residents of all 50 states. Therefore, as the Ninth Circuit held in *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001), this Court would have to apply the forum state's (Washington's) choice of law analysis to determine what law would apply in a purported nationwide class action.

a.    Washington Choice of Law Rules Require Application of the Laws of the Jurisdiction in Which Each Transaction Occurred. Under Washington choice of law rules, the laws of the state in which each putative class member purchased the products at issue would apply to his or her respective claims. Washington courts apply the "most significant relationship" test of the Restatement (Second) of Conflict of Laws ("Rest. 2d") to determine the state law that governs both tort and contract claims. *See, e.g., Johnson v. Spider Staging Corp.*, 87 Wn.2d 577, 580, 555 P.2d 997, 1000 (1976) (adopting Rest. 2d § 145 for tort claims); *Fluke Corp. v. Hartford Accident & Indem. Co.*, 102 Wn. App. 237, 249, 7 P.3d 825, 831 (2000) (applying Rest. 2d § 188 to contract claim); *Baffin Land Corp. v. Monticello Motor Inn*, 70 Wn.2d 893, 900, 425 P.2d 623, 627 (1967) (same). This standard requires a court to evaluate, first, "the contacts with each interested jurisdiction" with respect to the claims at issue, and, second, "the interests and public policies" of those jurisdictions. *Southwell v. Widing Transp., Inc.*, 101 Wn.2d 200, 204, 676 P.2d 477, 480 (1984). For tort claims, the relevant contacts include "the place where the injury occurred," "the place where the conduct causing the injury occurred," "the domicile, residence, nationality, place of incorporation and place of business of the parties," and "the place where the relationship, if any, between the parties is centered." Rest. 2d § 145; *see also, e.g., Kenneally v. Suzuki Motor Co.*, 1994 U.S. Dist. LEXIS 21554 at *6 (W.D. Wash. Aug. 9, 1994) (Rothstein, J.).

In addition, Rest. 2d § 148(3), which specifically addresses choice of law in cases involving fraud and misrepresentation, states that "If the place of negotiating the contract and

the place of performance are in the same state, the local law of this state will usually be applied." For contract claims, courts consider the place of contracting, place of negotiation, place of performance, location of the subject matter of the contract, and the parties' domicile, residence, place of business, or place of incorporation, in deciding which state has the most significant relationship to a claim. *See* Rest. 2d § 188; *Pacific Gamble Robinson Co. v. Lapp*, 95 Wn.2d 341, 346, 622 P.2d 850, 855 (1980). As with fraud and misrepresentation claims, if the place of negotiation and the place of performance are in the same state, the law of that state ordinarily applies. *Id.*; *Baffin*, 70 Wn.2d at 901, 425 P.2d at 628. For both tort and contract claims, Washington courts also consider the policies and interests of the forum and other interested states, the protection of justified expectations and similar policy considerations. *E.g.*, *Pacific Gamble*, 95 Wn.2d at 346-47, 622 P.2d at 855-56; *Fluke*, 102 Wn. App. at 252, 7 P.3d at 833; *Cox v. Lewiston Grain Growers, Inc.*, 86 Wn. App. 357, 366, 936 P.2d 1191, 1196 (1997); Rest. 2d § 6.

Applying these standards to Plaintiff's claims for violation of consumer protection acts, breach of warranty, unjust enrichment and breach of contract, it is apparent that the state with the most significant contacts, and that has the greatest interest in having its law applied, is that in which each purported class member purchased the products at issue. It cannot be disputed that under that theory, any injury that a class member suffered must have occurred, if at all, in the state in which she purchased the product at issue. *See, e.g., Clay v. American Tobacco Co.*, 188 F.R.D. 483, 497-98 (S.D. Ill. 1999) ("Plaintiffs also claim that their injury was the actual purchase of [defendants' products] and the money spent on those purchases. Obviously this occurred at the location of each sale"). Moreover, most of the other contacts relevant under Washington law and the Restatement also are with the class member's state of purchase: it is there that the allegedly false representations and omissions were made and received, the product was offered for sale, any contract was entered into and performed, the subject matter of the contract was located, the defendants' duties were allegedly breached and the relationship between the parties (to the extent there was one) was centered. In most instances, that state was

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

also the purchaser's state of residence.[3]  Under similar circumstances, Washington courts have applied the law of the place where the goods at issue were purchased and delivered. *See, e.g.*, *Baffin*, 70 Wn.2d at 901-03, 425 P.2d at 628-29 (applying Washington law to contract for lease/purchase of television sets between Washington motel and New York seller, where object of contract was delivered and installed in Washington).

As the Ninth Circuit has explained, "[u]nderstanding which law will apply before making a predominance determination is important when there are variations in applicable state law.  Where the applicable law derives from the law of the 50 states, as opposed to a unitary federal cause of action, differences in state law will compound the . . . disparities among class members from the different states." *Zinser*, 253 F.3d at 1189 (citations omitted); *see also, e.g.*, *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1012 (D.C. Cir. 1986) (Ruth Bader Ginsburg, J.) (holding that a district court must consider how variations in state law affect predominance and superiority), *cert. denied*, 482 U.S. 915 (1987).  It necessarily follows that "[a] district court's duty to determine whether the plaintiff has borne its burden on class certification requires that a court consider variations in state law when a class action involves multiple jurisdictions." *Castano*, 84 F.3d at 741.  That is the precise holding of *Zinser*, in which the Ninth Circuit affirmed the denial of class certification on the ground that, *inter alia*, the laws of many states would apply, destroying predominance of common issues and rendering the case unmanageable.  253 F.3d at 1192.  Before making a predominance determination, the court held, the trial court must conduct a choice of law analysis to determine what law applies to the claims of the putative class members.  253 F.3d at 1187.  Thus, before a class can be certified, the Court must apply "an individualized choice of law analysis to *each plaintiff's* claims." *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 627 (3d Cir. 1996), *aff'd sub nom. Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (emphasis added).

---

[3]While most class members presumably purchased the products at issue in their state of residence, any class-wide treatment would also have to account for transient class members -- those who reside in states different from the states in which they purchased the products at issue. *See Castano*, 84 F.3d at 747 (noting difficulty created by "further subclassing to take account of transient plaintiffs").

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

1    Indeed, with only rare exceptions, courts applying various state choice of law rules have

2    held, in cases with claims similar to those here, that the law of the state of each class member's

3    purchase must be applied to her claims, and that variations in the law of warranty, unfair trade

4    practices, unjust enrichment and breach of contract would cause noncommon issues to

5    predominate, rendering a class unmanageable. *See, e.g., Spence v. Glock*, 227 F.3d 308, 316

6    (5th Cir. 2000); *Castano v. American Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996); *Andrews*

7    *v. American Tel. & Tel. Co.*, 95 F.3d 1014, 1024-25 (11th Cir. 1996); *Lyon v. Caterpillar, Inc.*,

8    194 F.R.D. 206, 219 (E.D. Pa. 2000); *Clay v. American Tobacco Co.*, 188 F.R.D. 483, 497-502

9    (S.D. Ill. 1999); *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 453 (D.N.J. 1998); *In re Ford Motor*

10   *Co. Bronco II Prod. Liab. Litig.*, 177 F.R.D. 360, 371 (E.D. La. 1997); *In re Ford Motor Co.*

11   *Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 351 (D.N.J. 1997); *see also Zinser*, 253

12   F.3d at 1189 (Where the applicable law derives from the law of the 50 states, differences in

13   state law "'compound the disparities' among class members from the different states").

14   The Court should make this determination at this time on the basis of Plaintiff's

15   allegations in his complaint. *See Rikos v. Procter & Gamble Co.*, No. 1:11–cv–226, 2012 WL

16   641946 (Feb. 28, 2012 S.D. Ohio) (striking Plaintiff's class allegations on a CR 12(b)(6) motion

17   and applying California law because: (1) California statutes cannot be constitutionally applied

18   to all class members; (2) individual questions of law predominate the class claims; (3)

19   individual questions of fact predominate the class claims; and (4) the proposed class is

20   overbroad).

21   b.    An Analysis of the Laws of the Various States Demonstrates That There Are

22   Significant Differences in State Law That Preclude Certification.    Analysis of each claim

23   asserted in the complaint shows that variations in state law would render class treatment

24   unmanageable and improper.    Plaintiff alleges violations of consumer fraud / unfair trade

25   practice acts and common law fraud.    Numerous cases have held that variations in state unfair

26   trade practices or consumer protection acts compound the individual issues in putative

27   multistate class actions and preclude certification. *See, e.g., Castano*, 84 F.3d at 740-44 and

fn.11-16; *Spence*, 227 F.3d at 313, 316; *Andrews*, 95 F.3d at 1024-25; *Lyon*, 194 F.R.D. at 219; *Clay*, 188 F.R.D. at 497-502; *Chin*, 182 F.R.D. at 453; *Ignition Switch*, 174 F.R.D. at 351. Indeed, in some states, a litigant cannot bring a class action under the state's unfair trade practices act. *See, e.g.*, S.C. Code Ann. § 39-5-140(a); Ala. Code § 8-19-10(f). These and other numerous significant differences preclude certification of a nationwide class.

With respect to breach of warranty, again, numerous courts have recognized that the warranty law of the 50 states varies, giving rise to non-common issues that make class certification inappropriate. As one court has succinctly stated, "[t]he Uniform Commercial Code is not uniform." *Walsh*, 807 F.2d at 1016 (quoting James J. White & Robert S. Summers, *Uniform Commercial Code* 7 (2d ed. 1980)); *see also Castano*, 84 F.3d at 741, 745 n.20; *Ignition Switch*, 174 F.R.D. at 351 (state laws differ on "many key issues," including "a multitude of different standards and burdens of proof" for, among others, warranty claims); *Feinstein*, 535 F. Supp. at 605 (class certification denied because "even within the U.C.C. implied warranty umbrella, state law may differ"); *Osborne v. Subaru of Amer., Inc.*, 243 Cal. Rptr. 815, 820 (Cal. Ct. App. 1988) ("While the nationwide adoption of the Uniform Commercial Code provides this cause of action in virtually all states, it is not applied in the same fashion everywhere"). There are numerous significant differences among the law of implied warranty of the 50 states, including the standard for determining merchantability, the requirement of privity, what constitutes reasonable notice and which party bears the burden of proof regarding notice.

Variations among the state laws of breach of contract and unjust enrichment also would render the case unmanageable and preclude class certification. As the court held in *Clay*, in denying certification of a nationwide class alleging, *inter alia*, unjust enrichment:

> [t]he actual definition of "unjust enrichment" varies from state to state. Some states do not specify the misconduct necessary to proceed, while others require that the misconduct include dishonesty or fraud. Other states only allow a claim of unjust enrichment when no adequate legal remedy exists.

188 F.R.D. at 501 (citations omitted). As in *Clay*, Plaintiff's breach of contract and unjust

MOTION TO DISMISS - 22
No. 2:12-CV-00183-MJP
126484.0001/5317752.1

1    enrichment claims present variations in state law that would overwhelm common issues. These

2    variations in law further compound the disparities among class members and render class

3    treatment unmanageable.

4        c.    The Law of a Single State Cannot Constitutionally Be Applied to the Claims of

5    All Putative Class Members.  As the Supreme Court has held, a state, through its choice of law

6    rules, "may not take a transaction with little or no relationship to the forum and apply the law

7    of the forum in order to satisfy the procedural requirement [for a class action] that there be a

8    'common question of law.'"  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821 (1985).

9    *Shutts* holds that a state "must have a 'significant contact or significant aggregation of contacts'

10   to the claims asserted by each member of the plaintiff class, contacts 'creating state interests,' in

11   order to ensure that the choice of [that state's] law is not arbitrary or unfair." *Id.* at 821-22.  In

12   *Shutts*, the Supreme Court rejected the application of Kansas law to the claims of all class

13   members in a multistate putative class action, despite the fact that the defendant owned

14   property and conducted "substantial business" in Kansas. *Id.* at 819-20.

15       As discussed below, the claims of most class members have no connection with the State

16   of Washington, and little or no connection with the home state of each defendant.  Thus, with

17   respect to each class member, the alleged misrepresentations or omissions occurred and were

18   received, and the transactions at issue took place, in the state in which that class member

19   purchased the products at issue.  Under *Shutts*, the laws of Washington, New Jersey, New York or

20   Pennsylvania could not be applied to the claims of persons whose disputes have no significant

21   contacts with those states. *See, e.g., In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 177 F.R.D.

22   360, 371 (E.D. La. 1997) (holding that, under *Shutts*, the law of the manufacturer's home state

23   could not be applied in nationwide consumer class action asserting economic injury claims, even if

24   application of the law were permitted under Louisiana choice of law principles); *Schwartz v. The

25   Upper Deck Co.*, 183 F.R.D. 672, 678 (S.D. Cal. 1999) (*Shutts* would dictate application of all the

26   laws of the states in which any class plaintiff resided).

27

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

1    **4.    Individual Issues Predominate With Respect to Each Affected Computer, and therefore Whether Misrepresentations Occurred.**

2    Further, from Plaintiff's allegations the Court can see that individual issues predominate

3    even with respect to whether any misrepresentation occurred, in addition to causation and

4    damages. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2552 (U.S. 2011).   In *Dukes*,

5    the Court held that proof of commonality may overlap with the merits of the action. *Id.* In that

6    case, the Court found class certification improper, because a determination of the merits of the

7    action would require the Court to evaluate the reason for each and every employment decision

8    with respect to each putative class member – precluding commonality. *Id.*   The same is true

9    here: the Court would have to consider the merits of each putative class members' claims by

10    evaluating computer forensics opinions as to each and every one of the computers in question.

11    Further, unless the putative class members' computers were evaluated immediately after the

12    first RegCure scan, it would be impossible to identify what errors existed.  As the Plaintiff's

13    Complaint and the above discussion makes clear, this would be unavoidable even to determine

14    whether misrepresentations or breaches occurred.  As a result, it is hard to imagine how class

15    treatment is the superior means by which to litigate the putative class members' claims.

16    **IV.    CONCLUSION**

17    Accordingly, the Court should rule that Complaint fails to state a claim with respect to

18    the violation of Washington's Consumer Protection Act, fraud in the inducement, conspiracy to

19    commit fraud in the inducement, breach of express warranties, breach of the implied warranty

20    of merchantability, breach of contract, unjust enrichment, and the class action allegations.

21    DATED:   July 26, 2012

22

23    LANE POWELL PC

24    By  s/Gwendolyn C. Payton
         Gwendolyn C. Payton, WSBA No. 26752
25       *s/John R. Neeleman*
         John R. Neeleman, WSBA No. 19752
26       *s/Erin M. Wilson*
         Erin M. Wilson, WSBA No. 42452
27       Attorneys for Defendants

1

**DECLARATION OF SERVICE**

2          Pursuant to RCW 9.A.72.085, the undersigned certifies under penalty of perjury under

3   the laws of the State of Washington, that on the 26th day of July, 2012, the document attached

4   hereto was presented to the Clerk of the Court for filing and uploading to the CM/ECF system.

5   In accordance with their ECF registration agreement and the Court's rules, the Clerk of the

6   Court will send e-mail notification of such filing to the following persons:

7   **Ari J. Scharg**
    EDELSON MCGUIRE LLC
8   350 NORTH LASALLE STREET
    STE 1300
9   CHICAGO, IL 60654
    312-589-6370
10  Email: ascharg@edelson.com
    *PRO HAC VICE*
11  *ATTORNEY TO BE NOTICED*

12  **Benjamin H. Richman**
    EDELSON MCGUIRE LLC
13  350 NORTH LASALLE STREET
    STE 1300
14  CHICAGO, IL 60654
    312-589-6370
15  Email: brichman@edelson.com
    *PRO HAC VICE*
16  *ATTORNEY TO BE NOTICED*

17  **Chandler Givens**
    EDELSON MCGUIRE LLC
18  350 NORTH LASALLE STREET
    STE 1300
19  CHICAGO, IL 60654
    312-589-6370
20  Email: cgivens@edelson.com
    *PRO HAC VICE*
21  *ATTORNEY TO BE NOTICED*

22  **Jay Edelson**
    EDELSON MCGUIRE LLC
23  350 NORTH LASALLE STREET
    STE 1300
24  CHICAGO, IL 60654
    312-589-6370
25  Email: jedelson@edelson.com
    *PRO HAC VICE*
26  *ATTORNEY TO BE NOTICED*

27

1

**Rafey S Balabanian**
EDELSON MCGUIRE LLC

2   350 NORTH LASALLE STREET
STE 1300

3   CHICAGO, IL 60654
312-589-6370

4   Email: rbalabanian@edelson.com
*PRO HAC VICE*

5   *ATTORNEY TO BE NOTICED*

6

**Clifford A Cantor**

7   627 208TH AVE SE
SAMMAMISH, WA 98074-7033

8   425-868-7813
Fax: 425-868-7870

9   Email: cliff.cantor@comcast.net
*ATTORNEY TO BE NOTICED*

10

DATED this 26th day of July, 2012 at Seattle, Washington.

11

12   *Janet Wiley*
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾

13   Declarant

14

15

16

17

18

19

20

21

22

23

24

25

26

27

MOTION TO DISMISS - 26
No. 2:12-CV-00183-MJP

126484.0001/5317752.1

LANE POWELL pc
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107