THE HONORABLE CHIEF JUDGE
MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOSE PEDROZA, individually and on behalf
of all others similarly situated,

                      Plaintiff,

     v.

REVENUEWIRE, INC. d/b/a SAFECART, a
Washington corporation; and
PARETOLOGIC, INC., a Canadian
corporation,

                    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 2:12-cv-00183-MJP

**DEFENDANTS' REPLY IN
SUPPORT OF MOTION TO
COMPEL INSPECTION OF
PLAINTIFF'S COMPUTER(S)**

**NOTE ON MOTION CALENDAR:
AUGUST 24, 2012**

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL
No. 2:12-cv-00183-MJP
126484.0001/5466109.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

1    Plaintiff brought this lawsuit against Defendants claiming that they designed and sold a
2 software "cleaning" product that, when he installed it on his computer, found errors that did not
3 exist or were "dramatically overstated."  Yet, when Defendants request the opportunity to
4 inspect and analyze the computer, Plaintiff responds that the computer is irrelevant.

5 A.    **Plaintiff's Own Computer is Relevant to this Lawsuit.**

6    There is no question that a class action needs a representative with standing to sue
7 individually.  Plaintiff attempts to circumvent this basic premise by arguing that he need not
8 offer proof of his individual injury because his expert advises him that the RegCure software
9 does not accurately detect or report errors.  Plaintiff goes so far as to argue that the errors
10 reported on his computer are irrelevant because the software is "incapable of accurately
11 scanning for, detecting and repairing the errors."  (Reply (Dkt. No. 39) at 6.)  In the same
12 paragraph, Plaintiff acknowledges that RegCure likely fixes some errors but then informs the
13 Court that there is no evidence that any errors were actually fixed, presumably referring to the
14 errors on his computer.  Yet, an analysis of his computer, according to Plaintiff, is irrelevant.
15 This is simply not true.  As explained in the Blank Declaration, the only way to determine
16 whether false errors were reported and/or legitimate errors were fixed is to conduct a forensic
17 analysis of the computer at issue.

18    Plaintiff's response to the request for inspection is basically that Defendants'
19 programmers know what they did so he should not have to prove anything.  As explained in
20 Defendants' Motion to Dismiss, these allegations fail under *Iqbal/Twombly*.  More importantly
21 for purposes of this motion, Plaintiff alleges that "some" of the errors purportedly found on his
22 PC did not exist and/or were dramatically overstated by RegCure.  (Compl. (Dkt. No. 1) ¶ 49.)
23 There can be little doubt that determining the falsity of this allegation is necessary to
24 Defendants' defense.  In support of Plaintiff's position that "an inspection of Plaintiff's
25 personal computer is not needed," Plaintiff cites to *Gross v. Symantec Corp.*,  No. 12-0154
26 CRB, 2012 WL 3116158, *3 (N.D. Cal. July 31, 2012).  The Court may be familiar with *Gross*,
27 as Plaintiff relies on it heavily in opposition to the motion to dismiss.  *Gross* is distinguishable

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL - 1
No. 2:12-cv-00183-MJP
126484.0001/5466109.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107

on many levels. As relevant to this motion, the *Gross* court was not considering a motion to compel; the *Gross* court considered whether Plaintiff's complaint was sufficient to withstand a motion to dismiss. The court noted that reliance on an expert's opinion was sufficient to allege facts supporting plaintiff's *belief* that the representations made by the defendant were false. According to the *Gross* Court,

> The two latter defects, which focus on Plaintiff's basis for believing Symantec's statements to be false, are inapposite to the fraud inquiry. The FAC alleges that the results of an investigation by computer forensic experts, and not the actual status of Plaintiff's computer, revealed the falsity of Symantec's representations. FAC ¶¶ 45–46 . . . ; Opp'n at 11 (dkt.39) ("[T]he actual status of Plaintiff's computer is not at issue ... [*the software*] *would have reported the very same information regardless of its status*."). As Plaintiff's belief derives from the results of the forensic analysis, the allegations in the FAC sufficiently establish a basis for believing Symantec's statements to be false.

*Id.* (emphasis added). The pivotal difference between the allegations in *Gross* and those presented here is that Gross alleged that the software was designed to detect errors on a computer without "any actual assessment" and "regardless of the actual status of the system." *Id.* Conversely, in this case, Plaintiff concedes that RegCure may report "some" legitimate errors and/or "dramatically overstate" others. (Compl. ¶ 49.) Plaintiff does not allege that RegCure reported the "very same information regardless of [the computers] status," as was alleged in *Gross*.

Equally important is that the Court's analysis in *Gross* did not consider injury. In *Gross*, if the allegations were true then plaintiff received no value for having purchased the cleaning software. Here, however, Plaintiff claims that "the consumers were damaged as they purchased software with *less* value than what was reflected in the purchase price." (Opp'n to Mot. to Dismiss (Dkt. No. 35) at 10 (citing Compl. ¶ 27).) The decrease in value to the consumer requires an analysis of the value of the software the consumer thought they were buying as decreased by the extent of the alleged false positives and exaggerations of errors that were reported. The Court should therefore permit Defendants access to Plaintiff's computer to determine the extent of false positives or exaggerations, if any, presented to Plaintiff in March

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

2009.  This is no different than a court allowing the defendant to inspect the plaintiff's deck when she alleges faulty decking material in a class action.  To allow anything less would severely impede Defendants' ability to defend the individual suit, let alone a class action.

In addition to assessing damages, this information is also necessary in defending against class certification.  During the class certification stage, Defendants must make a determination as to whether Plaintiff's claims are typical and thus whether he is entitled to be a class representative.  As it stands, Defendants cannot assess this issue.  Without access to Plaintiff's computer, Defendants have no way of knowing whether Plaintiff used RegCure or was injured as a result.  Specifically, Defendants need access to the computer to assess whether (1) Plaintiff actually downloaded, installed and ran RegCure, (2) the software detected some errors, legitimate or otherwise, (3) the software fixed some or all of the errors, and (4) Plaintiff's computer operated more efficiently after the software was installed giving the software some value.  This analysis is important to determining typicality and, more fundamentally, Plaintiff's standing to bring this action.  Thus, Defendants should be afforded the opportunity to evaluate Plaintiff's claims by conducting a forensic analysis of the computer at issue.

**B.      Purposeful Access to the Plaintiff's Hard Drive is Not Harassment.**

Defendants do not seek "unfettered access" to Plaintiff's computer.  Defendants are not seeking "financial documents, family photos, privileged communications" or other private material.  Defendants simply request a mirror image of the hard drive to conduct a forensic analysis of the computer.  Defendants' expert, Erik Blank, discussed in his declaration, that in order to determine whether the RegCure software "reported 'false positives' registry errors," he would "need to examine Plaintiff's computer's hard disk drive as it existed subsequent to the registry 'cleaning.'"[1]  (Blank Decl. (Dkt. No. 34) ¶ ¶ 17-18.)  He also opined that the "efficacy

---

[1] Plaintiff filed a declaration of Serge Jorgenson in support of his Motion to Compel in which Mr. Jorgenson states that it is "technically infeasible" to access the computing environment that existed when Plaintiff allegedly ran RegCure on his computer.  However, Plaintiff should not be rewarded for failing to properly preserve evidence.  And even if the exact computing environment cannot be recreated, it is important that Defendants be permitted to examine the computer in the condition it is in now.  (*See* Declaration of Eric P. Blank (Dkt. No. 34) at ¶ 18, stating that "RegCure creates and stores to the hard drive an 'archive' copy of the registry as it existed before the 'cleaning,' [and so] Plaintiff's hard drive should also have the archive copy for comparison.").

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL - 3
No. 2:12-cv-00183-MJP
126484.0001/5466109.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107

of a cleaning will be extremely specific to each user" and he would need access to Plaintiff's hard drive not some "control" or "typical" drive.  (*Id.* ¶ 19.)  This analysis is especially important where, as alleged here, the allegations are subjective, *i.e.*, the errors were "*dramatically* overstated."  (Compl. ¶ 49 (emphasis added).)

During the transcribed meet and confer between counsel, defense counsel asked whether Plaintiff's counsel had a proposal on how to address their concerns regarding privacy and confidentiality.  They did not.  (Richman Decl. (Dkt. No. 39-1) at Ex. 1-A (Tr. at 11).)  In response, defense counsel suggested a third-party vendor make mirror images of Plaintiff's hard drive and that the parties enter into a stipulated protective order addressing any confidentiality, privilege or privacy concerns.[2]  (*Id.* at 14.)  Plaintiff's counsel would not agree to the proposal "without an understanding why your expert feels he needs this."  (*Id.* at 22.)  The recorded conversation speaks for itself and evidences an unwillingness on the part of Plaintiff's counsel to come to some agreement on how to structure the inspection of the hard drive while preserving Plaintiff's privacy.  As stated in the call, Defendants are open to entering into additional protective orders to address Plaintiff's concerns.

Defendants are not looking to harass Plaintiff but cannot agree to something less than full access to the hard drive or a bit-for-bit mirror image of it.  Defendants are already concerned that it appears no effort was made to preserve the integrity of the hard drive either when Plaintiff first became aware of his claim or even after this lawsuit commenced. Defendants simply ask that the hard drive not be further manipulated or altered until their expert has had the opportunity to conduct a forensic analysis of it.[3]

## C.    Meet and Confer Requirements Have Been Met.

Plaintiff's counsel appears to use the meet and confer requirement as a tool to defeat motions to compel as opposed to its intended purpose of reaching agreements without Court

---

[2] Indeed, the parties presented the Court with a Stipulated Protective Order on August 20, 2012. (Dkt. No. 38.)
[3] During the recorded call with opposing counsel, Defendants learned that Plaintiff continued to use the computer even after hiring counsel and an expert to pursue this lawsuit.  (Tr. 17-18.)  While it may be that Plaintiff's counsel took steps to preserve that evidence when they became involved, this does not appear to be the case.

intervention.    First, defense counsel did not violate the mediation privilege by disclosing conversations they had with Plaintiff's counsel during a discussion of housekeeping matters during a side session of the mediation.   Plaintiff's counsel boldly states "that the mediation privilege is to be construed broadly and covers all statements made during mediation."  (Opp'n (Dkt. No. 39) at 4 (citing *W. & Clay, LLC. v. Landmark Am. Ins. Co.*, No. C09-1423MJP, 2010 WL 1881880, at *1 (W.D. Wash. May 10, 2010)).)  The Court, however, never ruled that "any statements" made during mediation were privileged as represented by Plaintiff's counsel.[4] (Opp'n at 4 n.2.)   In fact, the Court referenced *Mutual of Enumclaw v. Cornhusker Cas. Ins. Co.*, for support that if the disputed statement was not actually made for purposes of "considering, conducting, participating in, initiating, continuing, or reconvening a mediation," it was not privileged.   *Id.* (No. CV–07–3101–FVS, 2008 WL 4330313 (E.D. Wash. Sept. 16, 2008).)   The conversation that counsel had during mediation regarding the scheduling of motions, attorney vacations and the meet and confer regarding inspection of the computer were not made for purposes of "considering, conducting, participating in, initiating, continuing, or reconvening a mediation," and are not privileged.  Plaintiff's counsel fails to address any other alleged infirmities with this meet and confer and instead claims only that they "are not at liberty to publicly disclose any communications that occurred in mediation."  (Opp'n at 4.)

But, even if Plaintiff's counsel could take issue with the first meet and confer, defense counsel conducted a follow-up conference with Plaintiff's counsel to again discuss Plaintiff's objections to their request to inspect his computer.  The answer was again "no."  Although the parties have different versions of the substance of this conversation, the point is that it occurred and it also satisfied the meet and confer requirement.  This conversation was then followed by a flurry of letters and emails regarding the issues raised in this motion.

In a final attempt to reach an agreement without Court involvement, while the motion was pending but before opposition, defense counsel agreed to another meet and confer.  This

---

[4] In *Landmark*, this Court only noted that "[a]t least one court in this district has held this 'privilege should be broadly construed.'"  *Id.* (citing *Prof'l Recreation Org., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. C09–174JLR, Dkt. No. 99 at 7 (W.D. Wash. Sept. 4, 2009)).

meeting was recorded and attended by three attorneys for Plaintiff and two attorneys and one e-discovery paralegal for Defendants. Despite that this recorded call was well-attended by legal counsel, Plaintiff's counsel nevertheless took the position that even that conversation was not a "real" meet and confer. (Tr. at 9.) In sum, according to Plaintiff, the first meet and confer was not sufficient because it occurred during mediation, the second meet and confer was mischaracterized by defense counsel, and the third meet and confer was not a "real" one. Defense counsel met with Plaintiff's counsel on at least three occasions to resolve this issue. Unfortunately, the parties have been unable to do so and now request Court intervention.

DATED:  August 24, 2012

LANE POWELL PC

By  *s/Gwendolyn C. Payton*
Gwendolyn C. Payton, WSBA No. 26752
*s/Michelle Peterson*
Michelle Peterson, WSBA No. 33598
*s/Erin M. Wilson*
Erin M. Wilson, WSBA No. 42454
Attorneys for Defendants RevenueWire, Inc. and ParetoLogic, Inc.

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## DECLARATION OF SERVICE

The undersigned hereby certifies under penalty of perjury under the laws of the State of Washington, that on the 24th day of August, 2012, I presented the attached document to the Clerk of the Court for filing and uploading to the CM/ECF system.  In accordance with their ECF registration agreement and the Court's rules, the Clerk of the Court will send e-mail notification of such filing to the following attorneys:

**Ari J. Scharg**
EDELSON MCGUIRE LLC
350 NORTH LASALLE STREET
STE 1300
CHICAGO, IL 60654
312-589-6370
Email: ascharg@edelson.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jay Edelson**
EDELSON MCGUIRE LLC
350 NORTH LASALLE STREET
STE 1300
CHICAGO, IL 60654
312-589-6370
Email: jedelson@edelson.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Benjamin H. Richman**
EDELSON MCGUIRE LLC
350 NORTH LASALLE STREET
STE 1300
CHICAGO, IL 60654
312-589-6370
Email: brichman@edelson.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Rafey S Balabanian**
EDELSON MCGUIRE LLC
350 NORTH LASALLE STREET
STE 1300
CHICAGO, IL 60654
312-589-6370
Email: rbalabanian@edelson.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Chandler Givens**
EDELSON MCGUIRE LLC
350 NORTH LASALLE STREET
STE 1300
CHICAGO, IL 60654
312-589-6370
Email: cgivens@edelson.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Clifford A Cantor**
627 208TH AVE SE
SAMMAMISH, WA 98074-7033
425-868-7813
Fax: 425-868-7870
Email: cliff.cantor@comcast.net
*ATTORNEY TO BE NOTICED*

DATED this 24th day of August, 2012 at Seattle, Washington.

*s/Erin  M. Wilson*
Erin M. Wilson, WSBA No. 42454
Email: wilsonem@lanepowell.com

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL - 7
No. 2:12-cv-00183-MJP
126484.0001/5466109.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107